UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUISE DAVENPORT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 CV 6855 |
| | ) |
| SERGEANT MATTHEW GILIBERTO, | ) Judge Rebecca R. Pallmeyer |
| OFFICER ANTHONY J. SIRISCEVICH, JR., | ) |
| OFFICER JEANETTE O'BRIEN, and | ) |
| THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Louise Davenport ("Davenport" or "Plaintiff"), is, in her words, an "'undomiciled' resident of the City of Chicago." (Compl. [1] ¶ 3.) Davenport brought this *pro se* action against Defendants Sergeant Matthew Giliberto, Officer Anthony Siriscevich, Officer Jeannette O'Brien, (collectively "the Officers") of the Chicago Police Department, and the City of Chicago pursuant to 42 U.S.C. § 1983. Count I alleges false arrest in violation of the Fourth Amendment; Count II alleges a claim for deprivation of property without due process, or a state law claim for conversion; and Count III is a claim for retaliation and intentional infliction of emotional distress. Plaintiff also seeks an injunction against Sergeant Giliberto and the officers under his direct control. The parties now bring cross motions for summary judgment on Plaintiff's claims. For the reasons set forth below, Defendants' motion for summary judgment [50] is granted and Plaintiff's motion for summary judgment [66] is denied.

## BACKGROUND

The following facts are drawn from the pleadings and the parties' Local Rule 56.1 submissions. F.H. Paschen ("Paschen"), a construction firm, contracted with the City of Chicago to perform work on the Wacker Drive Reconstruction project which began in June 2010. (Defs.' Rule 56.1 Stmt. of Facts [107] (hereinafter "Defs.' 56.1") ¶¶ 9-10.) Paschen received a 24-hour-per-

day construction permit to conduct work in the area of 400 to 499 South Wacker Drive (Wacker from approximately Harrison St. to Van Buren St.) from July 2, 2010 through December 31, 2010. (*Id.* ¶¶ 10-12.) During the course of the project, Paschen had repeated problems with trespassers on the construction site. (*Id.* ¶¶ 14, 24.) Construction workers and city employees often encountered such individuals at the site, and when asked to leave, some individuals reportedly refused to do so. (*Id.* ¶¶ 14-15.) There were also reports of people sleeping at the site, and of missing property. (Toscano Aff. [51-5], Ex. E to Defs.' 56.1, ¶ 5; Woods Aff. [51-4], Ex. D to Defs.' 56.1, ¶ 10.) Paschen, concerned about both theft and safety on the site, made multiple complaints to the Chicago Police Department. (Defs.' 56.1. ¶ 19; Toscano Aff. ¶ 56.)

**August 12, 2010 Arrest**

On August 12, 2010, Defendants, Officer Jeannette O'Brien ("Officer O'Brien") and Officer Anthony Siriscevich ("Office Siriscevich"), were patrolling South Lower Wacker Drive in response to the complaints made by Paschen. (Defs.' 56.1 ¶ 20.) At approximately 1:00 A.M., Officers O'Brien and Siriscevich observed Davenport "in the vicinity of" 430 South Lower Wacker and arrested her for allegedly trespassing at the construction site at that location. (*Id.* ¶¶ 20, 21, 25.) The arrest report states that Davenport was observed inside a fenced-in area on the construction site. (Pl.'s 56.1 Stmt. of Facts [67] (hereinafter "Pl.'s 56.1") ¶ 7.) According to Davenport, she had been sitting near a column on Lower Wacker Drive. She asserts that although there had been utility work in that area during the day, there were no signs prohibiting entry, and the area remained open to pedestrian and vehicle traffic. (Pl.'s 56.1 ¶¶ 12-14.) Davenport admits that there was a fence running along Wacker Drive in the area in which she was arrested, but denies that she ever entered the fenced-in area. (*Id.*¶¶ 8-9.) Davenport claims that when she asked why she was being arrested, Officer O'Brien pointed out the orange construction barrels nearby, and told Davenport that the area was a construction site. (Defs.' Resp. to Pl.'s 56.1 Stmt. of Facts [85] (hereinafter "Defs.' 56.1 Resp.") ¶¶ 10-11.)

While being detained, Davenport alleges that she advised Officer O'Brien that two bags located nearby—a black nylon gym bag and an Aldi shopping bag—belonged to her. (Defs.' 56.1 Resp. ¶ 18.) The black nylon bag was taken to the police station and inventoried by Officer Siriscevich. The Aldi bag, however, was left behind on the median, near where the Officers arrested Davenport, and was subsequently destroyed. (Defs.' 56.1 Resp. ¶ 18; Pl.'s 56.1 ¶ 22.) Defendants do not deny that a plastic bag containing "unidentifiable miscellaneous items" was left on the median where Davenport was arrested, but assert that Davenport only identified one of the two bags as her property. (Defs.' 56.1 Resp. ¶¶ 18, 22.) Officer O'Brien contends that she checked the Aldi bag to determine ownership, but was unable to verify that it belonged to Davenport.[1] (O'Brien Aff. [84-8], Ex. H to Defs.' 56.1 Add'l.,¶ 5.) Davenport claims that an appellate brief and other documents related to a pending case to which she was a party were inside the Aldi bag. (Pl.'s 56.1 ¶ 23.)

The Officers transported Davenport to the First District Police Station, where Officer O'Brien allegedly took possession of a sun visor, a wrist brace, and a medical alert bracelet that Davenport was wearing. (*Id.* ¶¶ 24-25.)[2] When Davenport was released from custody, her black nylon bag was returned, but the three items allegedly taken by Officer O'Brien were not inside. (*Id.* ¶¶ 25-26.) Davenport attempted to locate the items by returning to the police station on two occasions, but the items were never found and Davenport was unable to speak with Officer O'Brien. (*Id.* ¶¶ 27-28.) After unsuccessful attempts to locate the items, Davenport claims to have filed a complaint with the

---

[1] Officer O'Brien does not explain why, if she was attempting to determine if the Aldi bag belonged to Davenport, she did not ask simply Davenport.

[2] Defendants have both admitted and denied Plaintiff's assertion that Officer O'Brien took possession of Davenport's sun visor, wrist brace, and medical alert bracelet. (*Compare* Defs.'56.1 Resp. ¶ 24; *with* Defs.' Resp. to Pl.'s 56.1 Add'l. [79] ¶ 24.)

Federal Bureau of Investigations ("FBI") in September 2010.[3] (*Id.* ¶ 38.) According to Davenport, the three lost items and the items in the bag left on the median were worth approximately $200.00. (*Id.* ¶ 29.)

**September 30, 2010 Encounter**

On September 30, 2010, Sergeant Matthew Giliberto (hereinafter "Sergeant Giliberto"), and Officer O'Brien were patrolling a wooded embankment near the Chicago River. The Officers were clearing people from the area in anticipation of an event at which Mayor Daley would appear the following day. (Defs.' 56.1 Resp. ¶ 46.) The Officers spotted Davenport sitting in some bushes at the top of the embankment. (Pl.'s 56.1 ¶¶ 31-37.) Officer O'Brien signaled to Davenport to come to where she and Sergeant Giliberto were standing at the bottom of the embankment near the river. (*Id.* ¶¶ 33, 41.) Davenport claims that she was frightened, so rather than proceed down the embankment toward the Officers, she walked towards a clearing. (*Id.* ¶¶ 41-43.) Officer O'Brien approached Davenport in the open field and informed Davenport that she was on private property. (Defs.' 56.1 Resp. ¶ 46.) The Officers also explained that she could not sleep there that evening and would be arrested if she were found there the next morning. (*Id.* ¶¶ 44, 46.) Officer O'Brien suggested that Davenport sleep at the Pacific Garden Mission located nearby. (*Id.* ¶ 50.) Officer O'Brien and Sergeant Giliberto then left the area. (*Id.* ¶ 52.) The Officers did not say anything to Davenport about the arrest on August 12, nor did they mention the FBI complaints Davenport claims to have filed. (*Id.* ¶ 54.) During the encounter, Davenport perceived herself to be in physical danger and was worried about the actual threat of being arrested. (*Id.* ¶ 56.) She reports feeling scared, unnerved, anxious, and stressed. (*Id.* ¶ 55.)

## **DISCUSSION**

As noted, both sides seek summary judgment. Davenport argues that she was arrested

---

[3] The FBI report is not in the record before the court.

without probable cause on August 12, 2010. She also alleges a federal due process claim and a state law conversion claim concerning the property loss she suffered as a result of the arrest. Finally, Davenport argues that she suffered extreme emotional distress as a result of the encounter with the Officers on September 30, 2010. Defendants contend that the Officers had probable cause to arrest Davenport on August 12, 2010, and, in the alternative, that the Officers are shielded from liability by qualified immunity. Defendants argue that Davenport's due process claim fails because there is an adequate state law remedy available. Defendants argue, further, that Davenport's state law conversion claim is barred by the Illinois Tort Immunity Act's one-year statute of limitations. Finally, Defendants claim that Davenport has not presented adequate evidence to support a claim of intentional infliction of emotional distress.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011). The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56). After the moving party has designated such facts, the non-moving party must show there is a genuinely disputed fact by designating particular materials from the record. *See* FED. R. CIV. P. 56(c)(1). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). Because both parties have moved for summary judgment, the court adopts a "Janus-like perspective: As to each motion the nonmovant's version of any disputed facts must be credited." *Adkins v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 787 F. Supp. 2d 812, 814 (N.D. Ill. 2011).

**Count I: False Arrest**

False arrest is a claim for unreasonable seizure prohibited under the Fourth Amendment.

5

*Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012) (citation omitted). In order to prevail on a claim for false arrest, the plaintiff must show that there was no probable cause for his or her arrest. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012) (citing *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007)). Therefore, "'[p]robable cause is an absolute bar to a claim of false arrest under the Fourth Amendment and section 1983.'" *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (quoting *Stokes v. Bd. of Ed. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). "Whether probable cause exists depends upon the reasonable conclusions to be drawn from the facts known to the arresting officer at the time of the arrest." *Maniscalco*, 712 F. 3d at 1143-44 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely or not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). To determine if an officer had probable cause, the inquiry is purely objective; "the officers' subjective state of mind and beliefs are irrelevant." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Defendants argue that the Officers had probable cause to arrest Davenport because the Officers went to 430 South Wacker Drive in response to several complaints of trespassers, and observed Davenport on the Lower Wacker Drive Reconstruction Project construction site. (Defs.' Mem. in Supp. of Mot. Summ. J. [54] (hereinafter "Defs.'Mem.") at 3.) Davenport, for her part, argues that the area was not marked with "no trespassing" signs, and she was never inside the fenced-off area. (Pl.'s Mem. in Supp. of Mot. for Summ. J. [66] (hereinafter "Pl.'s Mem.") at 3.) She also points out that the criminal charges were later dismissed.[4] Whether the Officers' assessment that Plaintiff was trespassing was correct, however, is not dispositive. The court asks only whether

---

[4] Davenport reports that the charge against her was dismissed because the Officers did not appear in court. (Pl.'s Mem. at 3.)

a reasonable officer would have believed the person had committed a crime. *Rodriguez*, 509 F.3d at 399. The test is met here. The Officers encountered Davenport at 1:00 a.m. in an area in which construction work had been performed, following complaints from the construction company about trespassers. (Defs.' 56.1 ¶¶ 9, 13, 17, 23, 24.) Davenport concedes that barricades and cones were present in the location where she was arrested, and that construction had been done in the area. (Pl.'s 56.1 ¶¶ 11, 14.) Davenport denies that she ever entered the fenced-in area, (*id.* ¶¶ 8-9), but even if there is a genuine dispute of material fact regarding whether Davenport was in a completely fenced-off construction site, the undisputed facts suffice to establish that a reasonable officer could have concluded that Davenport was trespassing on the site.

Moreover, if the court were to conclude that disputes about Davenport's precise location cast doubt on probable cause, Defendants would be shielded in this case by the doctrine of qualified immunity. An officer is entitled to qualified immunity in a false-arrest case "when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston County,* 674 F.3d 874, 879-80 (7th Cir. 2012) (citing *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998) "The doctrine allows 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey*, 148 F.3d at 725. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . ." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In this case, the police had received several complaints about trespassers, and they found Plaintiff seated on Lower Wacker Drive at 1:00 a.m., in a

construction area in the presence of barricades and cones.  Officers in Defendants' position could reasonably, if mistakenly, have believed they had probable cause to arrest her even if, at the time of the encounter, Plaintiff was not inside the fenced-in area.  The court concludes that Defendant officers are entitled to qualified immunity and therefore grants summary judgment as to the false arrest claim asserted in Count I.

**Count II: Deprivation of Property without Due Process and Conversion**[5]

In order to assert a successful procedural due process claim, "a plaintiff must show that he or she was deprived of a constitutionally protected interest in life, liberty or property." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007).  "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004).) Davenport claims that Officer O'Brien left one of her bags at the scene of the arrest where the bag and its contents were later destroyed.  She also claims that Officer O'Brien took items from her which were never returned.  O'Brien's alleged conduct can be understood either as negligent or intentional.

Defendants correctly point out that claims for the negligence of a state actor do not implicate the Fourteenth Amendment.  *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).  If, on the other hand, Officer O'Brien acted deliberately in seizing Plaintiff's belongings, the claim fails for a different reason:  intentional deprivations of property caused by unauthorized acts of state or city officials do not give rise to § 1983 claims for deprivation of property so long as state courts provide an

---

[5] Plaintiff's amended complaint sets forth Count II as an Illegal Seizure of Property, Conversion, and Loss of Use of Property.  (Pl.'s Am. Compl. [33] at 2.)  The court denied Defendants' motion to dismiss that claim and noted that it may be construed either as a constitutional claim for deprivation of her property without due process, or a state law claim of conversion.  (*See* February 7, 2012 Minute Order [24].)

adequate post-deprivation remedy. *Gable v. City of Chicago*, 296 F.3d 531, 539-41 (7th Cir. 2002). Defendants contend that Davenport's due process claim fails as a matter of law because there was an adequate post-deprivation remedy available under state law. (Defs.' Mem. at 7-8.) In Illinois, the state law remedy for such deprivation is a common law tort claim of conversion. *See Kahilly v. Francis*, No. 98 CV 1515, 2008 WL 5244596, at *3 (N.D. Ill. Dec. 16, 2008). Davenport has not claimed that the state law remedy is inadequate, and in fact, she has asserted such a claim. Because there is an adequate post-derivation remedy available under state law, Davenport's federal due process claim must be dismissed.

The court has supplemental jurisdiction over Davenport's state law conversion claim. Defendants ask the court to dismiss that claim, as well, on the ground that it is untimely. The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS § 10/1-101, *et seq.*, protects local public entities from liability arising from governmental operations. *See Van Meter v. Darien Park Dist.*, 207 Ill.2d 359, 368, 799 N.E.2d 273, 279 (Ill. 2003). When a public employee is sued individually for acts that occur during the course of his/her employment, a one-year statute of limitations applies. 745 ILCS § 10/8-101. *Racich v. Anderson*, 241 Ill. App. 3d 336, 337, 608 N.E.2d 972, 973 (3rd Dist. 1993). The Act states: "No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." The alleged incident involving conversion occurred on August 12, 2010, but Davenport did not file her complaint until September 29, 2011. The court, therefore, grants summary judgment in favor of Defendants on the state law claim asserted in Count II.

**Count III: Intentional Infliction of Emotional Distress**

In Count III, Davenport raises a claim of intentional infliction of emotional distress ("IIED") arising from her encounter with Officer O'Brien and Sergeant Giliberto on September 30, 2010. Unlike her state law claim for conversion, Davenport's IIED claim was timely, filed within one year

9

of the incident. Under Illinois law, to state a claim for IIED, a plaintiff must prove that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that [his or her] conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Graham v. Commonwealth Edison* Co., 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 866 (1st Dist. 2000) (citations omitted). The first element requires plaintiff to show that the defendant's alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 90 360 N.E.2d 765, 767 (Ill. 1976) (citation omitted).

Even viewed in the light most favorable to her, the facts do not support Davenport's IIED claim. The undisputed facts establish that Officer O'Brien found Davenport sitting in some bushes on private property along the banks of the Chicago River. (Pl.'s 56.1 ¶¶ 31-37.) Officer O'Brien approached Davenport and told her that she was on private property, explained that she could not sleep there that evening, and told her that she could be arrested if she was found there the next morning. (Defs.' 56.1 ¶¶ 44-48.) Officer O'Brien suggested that Davenport sleep at the Pacific Garden Mission, and then left. (*Id.* ¶¶ 50, 52.) Davenport believes that Officer O'Brien or Sergeant Giliberto had no legitimate reason to be in the area other than to harass her. (Am. Compl. ¶¶ 37b-37c.) The court is uncertain how Plaintiff's observations of police activity support this conclusion; but assuming it is true, there is no evidence that the officers did engage in harassment. Apart from explaining that Davenport was not permitted to sleep in the area, the officers did not in fact speak to her about her previous arrest, the complaint she claims she filed with the FBI, or any other matter. Davenport testified that during this September encounter with police she was frightened, perceiving herself to be in physical danger, and worried that she would be arrested. (Defs.' 56.1 ¶¶ 55-56.) Whether the Defendants' conduct was extreme or outrageous, however, is judged using an objective standard based on all the facts and circumstances of a case. *See Lewis v. School*

10

*Dist. No. 70*, 523 F.3d 730, 747 (7th Cir. 2008). Davenport's encounter with the officers appears to have been unpleasant and distressing for her, but there is no evidence that Officer O'Brien or Sergeant Giliberto conducted themselves in a manner that could be characterized as extreme or outrageous. "Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities' do not qualify as extreme and outrageous conduct." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 20-21, 607 N.E.2d 201, 211 (Ill.1992) (citations omitted). On the record here, it is not clear that Davenport has established even that much. A reasonable jury could not find that Defendants intentionally inflicted emotional distress. They are entitled to summary judgment on Count III.

**Injunctive Relief**

Davenport's complaint also asks the court for an injunction against Sergeant Matthew Giliberto and officers under his command from subjecting her to further harassment, intimidation, and false arrests. (Am. Compl. 2, 6.) As the undisputed evidence defeats her substantive claims, there is no basis to enjoin the officers's activities. Davenport's request for injunctive relief is stricken without prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [50] is granted, and Plaintiff's motion for summary judgment [66] is denied.

ENTER:

Dated: September 30, 2013

REBECCA R. PALLMEYER
United States District Judge

11